[Civ. No. 1983.   Third Appellate District.—August 6, 1919.]

MAUD IRENE LISENBEE, Respondent, v. CHARLES SAMUEL LISENBEE, Appellant.

[1] DIVORCE—DENIAL OF — SEPARATE MAINTENANCE — ENFORCEMENT OF JUDGMENT—APPOINTMENT OF RECEIVER.—A superior court has jurisdiction to appoint a receiver to take custody of and sell the property, whether it be community or the separate property of the husband, to enforce a judgment for separate maintenance in favor of the wife, a divorce being denied, but such power should be exercised with great care and circumspection and only upon the imperative necessities of the case in which it is sought to be invoked.

APPEAL from a judgment of the Superior Court of San Joaquin County.   George F. Buck, Judge.   Affirmed.

The facts are stated in the opinion of the court.

A. H. Carpenter and J. D. Hinkle for Appellant.

Charles De Legh for Respondent.

HART, J.—On the twenty-second day of May, 1915, the complaint in this action was filed, in which plaintiff prayed for a divorce from defendant and, among other things, asked that certain property, mentioned in the complaint, be declared to be community property.   The action went to trial and the court found that plaintiff was not entitled to a divorce for the reason that there was not sufficient corroboration of the alleged acts of cruelty set forth in the complaint; that the real property mentioned in the complaint was the separate property of defendant, but that plaintiff, having with money earned by her from her work and labor contributed toward the purchase of said property, was entitled to a community interest therein to the value of one thousand five hundred dollars; and defendant was ordered to pay for her maintenance the sum of twenty-five dollars per month, which payments were made a lien on the community interest of the parties.

1. When suit for maintenance maintainable independent from suits for divorce, notes, 77 Am. St. Rep. 228; Ann. Cas. 1913D, 1132.

On the twenty-fourth day of November, 1917, the court made a formal order for the issuance of a writ of execution, directed to the sheriff of San Joaquin County, "reciting said judgment and directing the said sheriff to levy upon and sell according to law in such cases the following described real property, or so much thereof as may be necessary to satisfy said judgment" for maintenance and costs, the real property described in the complaint and in which, it was found, the plaintiff had a community interest to the extent of one thousand five hundred dollars.

The defendant having failed to comply with the terms of the decree requiring him to pay to plaintiff twenty-five dollars per month, the court, on the fourteenth day of January, 1918, after due proceedings, made an order appointing one R. B. Teefy a receiver in the premises, said order reciting that he "is authorized and empowered to take over and receive from the sheriff of this county any and all money derived from the sale of the real property upon execution in this action in excess of the sum of five hundred dollars (now due this plaintiff), and the said R. B. Teefy is also authorized and empowered to take over and hold possession of any real property described in said writ of execution remaining unsold after the satisfaction of such writ."

This appeal is by the defendant from said order appointing receiver.

It is contended: 1. That "the superior court in a divorce proceeding has no jurisdiction to deal with the separate property of the spouses"; 2. That the court exceeded its jurisdiction by appointing a receiver to take custody of and sell the property described in the order appointing the receiver for the purpose of satisfying the judgment for maintenance, costs, etc.

The point first above stated we cannot review on this appeal, since there is here no appeal from the judgment in the divorce action. Indeed, all that the record here contains as to the divorce action itself is the judgment-roll therein. The record does not show the evidence upon which the court based its findings in said action. We must, therefore, presume that there was sufficient evidence to support the findings. While the order from which this appeal is prosecuted grew out of the divorce action and, indeed, involves the granting of an ancillary remedy in aid of the execution of

the judgment in said action, this is, nevertheless, so far as the right to attack said judgment is concerned, under the record before us, a collateral proceeding—that is to say, the attack on said judgment on this appeal is in effect collateral, and consequently all intendments and presumptions in support of the judgment must be indulged just the same as though the present proceeding were an entirely new and independent action having such relation to the divorce action as to make the question of the validity of the judgment in the latter action a material and important issue in the former. It may be observed that the finding that the property described in the complaint "is the separate property of the defendant, save and except the sum of one thousand five hundred dollars in value thereof, which the court finds is the community interest of plaintiff and defendant," seems on its face to be somewhat contradictory or, at least, not clear in its meaning, still it is a matter of little consequence whether the property which the receiver was authorized to take charge of and sell to satisfy the judgment is community or the separate property of the defendant. (Civ. Code, sec. 141.) That section, in effect, provides that, where there is community property of the spouses, such property must be resorted to for satisfaction of an allowance for maintenance or alimony, but, if there be no community property, then the separate property of the husband may be resorted to for that purpose.

[1] As to the second point, viz., that the court exceeded its jurisdiction by appointing a receiver to take custody of and sell the property, the contention of the appellant is that the effect of the judgment upon either the community property or the separate property of the defendant was to create a lien thereon, and, therefore, to make the lien effective, it was necessary to foreclose the same in a proceeding for that purpose. There is no force to the proposition.

Under the terms of section 671 of the Code of Civil Procedure a judgment, from the time it is docketed, becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in the county, owned by him at the time, or which he may afterward acquire, until the lien ceases. The effect of such lien is to preserve whatever efficacy the judgment has from the time it is docketed, and it is, in effect, merely a remedy in aid of the execution. In

other words, the object of the lien is manifestly to render the judgment capable of enforcement, even though the judgment debtor should sell or mortgage his real property after the judgment was docketed. No contention has ever been made that a judgment cannot be satisfied by an execution issued in the usual manner of such a process. It would, indeed, amount to a procedural circumvolution wholly unnecessary and antagonistic to the genius of the reformed procedure if the law contemplated and it was necessary to hold that, to secure the benefit of the lien provided in section 671, a proceeding to foreclose such lien was required. The judgment in a divorce action, in so far as it awards maintenance to the wife, is the same as any money judgment, the wife's position being assimilated to that of a creditor of her husband (*Murray* v. *Murray,* 115 Cal. 266, 275, [56 Am. St. Rep. 97, 37 L. R. A. 626, 47 Pac. 37]), and, while the effect of the docketing of such a judgment is to create a lien upon the property, community or separate, of the husband, the satisfaction of such judgment, in the absence of a provision awarding any other remedy for that purpose, could undoubtedly be secured by the usual method of executing judgments or without resorting to a proceeding to foreclose the lien following from the docketing of such judgment.

But the code sections conclusively answer the contention of appellant with respect to the remedy to be invoked to secure the payment of money due under an order or judgment awarding, in a divorce action, maintenance to the wife.

Section 136 of the Civil Code provides: "Though judgment of divorce is denied, the court may, in an action for divorce, provide for the maintenance by the husband, of the wife and children of the marriage, or any of them."

Section 140 of the same code reads: "The court may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case."

Thus the remedy for the enforcement of an order or a judgment for maintenance through the instrumentality of a receiver appointed by the court for that purpose is expressly authorized by the code, and in this case the court has done no more or gone no further than the law authorizes.

It is, of course, true that the general power in the courts
to appoint receivers to take charge and control of and, for
the purposes of the receivership, title to property in litiga-
tion, is an extraordinary power, and should be exercised with
great care and circumspection and only upon the imperative
necessities of the case in which it is sought to be invoked.
The legislature, however, seems to have deemed the appoint-
ment of a receiver as peculiarly adapted to the enforcement
of a judgment for maintenance in an action for divorce and,
indeed, the only efficacious remedy in cases like this where
other remedies applicable thereto have failed in their pur-
pose, and it is probable, therefore, that it was intended that
it should be allowed upon a mere showing that other rem-
edies had proved to be ineffectual for that purpose. This
view is sustained by the consideration that, generally, such
cases do not involve complicated matters or numerous con-
flicting interests, the sole object being merely to satisfy a
judgment as to a single claim growing out of the relation-
ship of marriage between the parties and, therefore, pri-
marily based upon considerations antedating the time of the
separation or divorce and inhering in the contract of mar-
riage itself.

Section 140 of the Civil Code does not, it is true, specifi-
cally point out the duties and powers of a receiver appointed
by virtue of its provisions; but the section has been construed
in several cases and the authority and duties of such a re-
ceiver defined. We may refer herein to one of those cases
only—*Petaluma S. Bank* v. *Superior Court,* 111 Cal. 488—in
which, at page 495, [44 Pac. 177, 179], the court thus ex-
plained the powers and duties of a receiver appointed under
said section 140: ''So far as I am advised, this section has
not been the subject of a judicial construction, and the
powers and duties of a receiver appointed in pursuance of
its provisions have not been defined; but it would not seem
difficult to determine in what cases and for what purposes
he is to be appointed. The whole object of his appointment
is to provide security for the payment of such allowance as
is made for the maintenance of the divorced wife, and this
would be accomplished by vesting him with the title and
control of some productive property of the husband, out of
the income of which he could pay such allowance, or by au-

thorizing the sale of property to create a fund, the income of which would be applied to the same purpose.''

It is not improper to say that counsel for the respondent filed no brief in this case, nor did they orally argue the cause when it was called for hearing. Whether respondent thus intended to manifest an abandonment of the case on appeal or regarded her position so obviously sound as to require no argument, either oral or written, we are, of course, unable positively to say. We are constrained to say, however, that, if it was her intention for any reason to abandon the case on appeal, it was her duty to have joined in an authorization for a dismissal of the appeal, and thus have saved this court, already burdened with work which must be disposed of within a limited time, of a considerable amount of extra labor. On the other hand, if it was her desire to secure a decision by this court of the legal issues submitted by the appeal, she should have supported her position upon the points involved either by oral argument or a printed or typewritten brief, and thus have taken from this court that labor which rightfully belongs to the lawyers. We have, however, notwithstanding the extra labor entailed upon us by the neglect of respondent to present her side of the case, examined the points with the same care that we always try to give to those cases which are fully argued and presented, assuming that, if respondent desired to abandon the case on appeal she would have apprised us of the fact, and the examination thus given the case has convinced us that there is, upon the record as it stands before us, no merit in the appeal.

The order is affirmed.

Burnett, J., and Chipman, P. J., concurred.