[Civ. No. 12043.   First Dist., Div. One.   Nov. 12, 1942.]

NADA TRUSCOTT WELLBORN, Appellant, v. CHARLES WELLBORN, Respondent.

Geo. E. Foote and E. R. Vaughn for Appellant.

Barry Sullivan for Respondent.

BRAY, J. pro tem.—Appeal from an order made after judgment denying plaintiff's motion to quash writ of execution and vacate execution levy and sale.

Plaintiff brought this action against defendant to annul their marriage on the ground that at the time of the marriage defendant had a previous wife living. She also sought to quiet her title to certain real and personal property which she claimed as her separate property. Defendant, by answer and cross-complaint, claimed that the property had been paid for with his earnings, although the record title stood in the name of plaintiff, and asked that his ownership of the property be decreed. In answering the cross-complaint, plaintiff alleged that the property had been entirely paid for with the savings she had possessed before the marriage. The court granted the annulment and rendered judgment concerning the property. Plaintiff claims that the conclusions of law and judgment as now of record are not the ones actually signed and entered by the court. This situation will be hereinafter discussed in detail. Upon motion of defendant, and after notice to plaintiff, an order for the issuance of a writ of execution was made by the court, and execution issued. The sheriff levied upon the real property described in the judgment and after due notice sold the same to the defendant for $1,000. The sale took place July 1, 1940. On June 20, 1941, plaintiff gave notice of motion to quash the execution and vacate the levy and sale. This motion was denied without prejudice. On July 2, 1941, plaintiff again gave notice

of motion to quash the execution and to vacate the levy and sale. On July 3, 1941, the sheriff issued defendant the customary sheriff's deed to the property. The second motion to quash was heard on July 15, 1941, and was denied by the court, and this appeal is from the order denying that motion.

The first point made by the appellant is that the conclusions of law and judgment were changed and interlined by the judge after he had originally signed them and after they had been filed and entered. There is no question but that these papers as originally typed were changed by interlineations. Such interlineations bear the marginal signature of the trial judge. The findings of fact contain the following finding as to the property involved here: "That the plaintiff and cross-defendant and the defendant and cross-plaintiff herein are the owners of the following described real and personal property." This paragraph was not interlined or changed.

The following is the original typing of the material parts of the conclusions of law and the judgment, together with the interlineations as they appear in the record: "Conclusions of law   The Court finds that the marriage of the parties should be annulled; That the defendant and cross-plaintiff has

$1250.00 ~~interest in~~ lien on the real and personal property; That the owns said property subject to plaintiff and cross-defendant ~~have the balance of the equity said lien in said properties.~~"

The judgment shows the following: "It is adjudged and decreed that the plaintiff and cross-defendant ~~and the defendant and cross-plaintiff are~~ is the owner of the following described . . . property: . . . ."

The judgment further provides: "The defendant and cross-plaintiff ~~owns an equity in~~ has a lien on said properties in the sum of twelve hundred and fifty dollars ($1250.) and the plaintiff and cross-defendant owns ~~the balance of the equities in~~ the said properties subject to said lien."

It will be noted that the finding of fact which stood unchanged found that the plaintiff and defendant together were the owners of the real property, while the conclusions and judgment were changed from a determination in one

place that the property belonged jointly to the parties subject to a $1,250 "interest" therein of defendant and in another place, that defendant owned an equity in the property in the sum of $1,250 and the balance of the equities belonged to both parties, to a determination that plaintiff is the owner of the property subject to a lien of the defendant on the property in the sum of $1,250. The record fails to disclose when these interlineations were made. Plaintiff insists that they were made after the filing and entry of the judgment. However, there is no evidence to that effect. Since the judge would have no right to modify his signed judgment in matters of substance ex parte and without proceedings therefor, and since this court is bound by the rule that the regularity of the proceedings is presumed in the absence of proof to the contrary, we must presume that the record as it now stands is correct, and that the changes were made by the judge in the draft of the conclusions and judgment before they were signed. The findings and conclusions and judgment recite that they were signed in open court on December 20, 1939. They were filed and entered the following day. There is an affidavit of service of the "within Findings of Fact and Conclusions of Law," on plaintiff's attorney on December 4, 1939, and an affidavit of service on him on December 11, 1939, of the "within Judgment." Moreover, on the second motion for the issuance of a writ of execution the same judge who signed the findings and judgment and made the interlineations, passed upon the motion. Had these charges been true he undoubtedly would have so found. His granting of the motion is a finding, by the man who above all others should know the true situation, that the charges were unfounded.

Therefore, so far as this court is concerned the judgment is one holding that plaintiff is the owner of the property subject to the lien of defendant thereon in the sum of $1,250. The discrepancy between the findings which find that both parties are the owners of the property, and the conclusions of law and judgment which hold that plaintiff is the owner subject to defendant's lien, do not invalidate the judgment, especially as this proceeding is a collateral attack upon the judgment.

This brings us to the most important question on the appeal, which is whether the judgment is one upon which execution will issue. Or put another way, will execution

issue upon a judgment granting a lien on real property, but where no personal judgment is given, no order for payment of money made, and no provision made in the judgment for the enforcement of the lien.

Where a simple money judgment is rendered it becomes a lien on the real property of the judgment debtor. The existence of such a lien, created by statute upon a personal judgment, would not, of course, preclude execution upon that property or other property of the judgment debtor. It has been said that a judgment lien, referring to the statutory judgment lien, is "enforced" by execution levy and sale. (*Corporation of America* v. *Marks*, 10 Cal.2d 218, 220 [73 P.2d 1215, 114 A.L.R. 1162]; 15 Cal.Jur. 231.) Where for some reason execution does not lie, the procedure for enforcement is an equitable action to foreclose the judgment lien (*Corporation of America* v. *Marks, supra*). This defendant could have done here, but he attempted to enforce the lien by execution, without the necessity of such action.

Does execution lie where a lien is expressly created by judgment on particular property and there is no personal liability? *Montgomery* v. *Meyerstein*, 195 Cal. 37 [231 P. 730], holds, in effect, that where a judgment decrees a lien upon specific property, without ordering its sale, the lien may not be enforced by either a writ of execution or a writ in the form of an order of sale of the property. In that case a vendee of real property brought an action to set aside the sale and to recover the amounts paid on the purchase price, on the ground of fraud. The court rendered a personal judgment in favor of the vendee and decreed the amount thereof a lien upon the realty. The court held that the lien could not be enforced by execution levy and sale, in the absence of a direction amounting to an order of sale in the decree. The court stated (p. 43) that the plaintiff in that case did not receive by the judgment of the trial court "any decree directing the foreclosure of said lien or directing or authorizing the issuance of any writ of execution or order of sale having such effect. This being so, we look vainly through the title and chapter of the Code of Civil Procedure regulating the issuance of writs of execution for any authority reposed in the clerk of the trial court to issue a writ of execution having for its effect the foreclosure of a lien upon specific real property in the absence of any provision in the decree establishing the lien which ordains its foreclosure;

nor are we cited by respondent to any authorities supporting the view that an execution can issue for the sale of specific property encumbered by a vendee's lien without a direction in the judgment establishing such lien which shall decree its foreclosure and the sale of the property." The court reached the conclusion that execution would not lie, in spite of the fact that there was a personal judgment in favor of the vendee. A much stronger situation than in this case where there is no personal judgment. In the Montgomery case, the court held that writs of execution can only be issued on personal judgments for money, and then only on such types of judgments and judgment liens as are provided for in section 674, Code of Civil Procedure (§ 671 at the time of the Montgomery decision). The making of the judgment a lien on specific property according to the decision in that case, takes even a personal judgment out of the category of judgments upon which writs of execution will issue. The court, at some length, discusses the history and purpose of section 684, Code of Civil Procedure, which provides that if the judgment is for money it may be enforced by a writ of execution, and that if the judgment requires the sale of real property the steps necessary to enforce that requirement are provided. In the case at bar, there was no money judgment and no requirement for the sale of real property, but in the discussion concerning section 684, Code of Civil Procedure, the court makes clear that in this state there is a definite distinction between the mode of executing a common law judgment for money, by the issuance of a writ of execution, and the mode of executing a decree in equity providing a lien, and that if the decree does not provide the method of its enforcement, only an equitable action can enforce it. In any event, a writ of execution cannot be used for that purpose. For, says the court (p. 46), "It would seem to clearly follow that in the absence of any provision in the decree of the court directing a sale of the premises upon which by said decree a lien has been imposed an ordinary writ of execution issuable to enforce a common-law judgment has no office and cannot be availed of as a substitute for an absent order of sale." It will be noted that the holding in the Montgomery case was followed in *Liuzza* v. *Brinkerhoff*, 29 Cal.App.2d 1 [83 P.2d 976].

There are two other cases dealing with this question, which

at first blush might be considered as opposing the rule in the Montgomery case. However, an examination of them shows that they do not so hold. The first, *Lisenbee* v. *Lisenbee*, 42 Cal.App. 567 [183 P. 862], involved an order requiring a husband to pay his wife $25 per month for her support, the payments being made a lien upon the community interest of the parties in certain property. Later the court made an order for issuance of a writ of execution directing the sheriff to sell the property. Still later, an order was made appointing a receiver to take over the proceeds of sale from the sheriff in so far as such proceeds exceeded amounts then due the wife, and to hold possession of such part of the property described in the writ as had not been sold. Upon appeal, the court upheld the propriety of the order appointing the receiver, and in dicta, upheld the issuance of the writ of execution, although no attack had been made on it by either party. Neither in the Lisenbee case nor in the Willen case hereinafter cited was the Montgomery case cited or discussed. In fact the court stated (p. 570) : "No contention has ever been made that a judgment cannot be satisfied by an execution issued in the usual manner of such a process." It will be noted, however, that in the Lisenbee case there was a direct order for the payment of the money, that is, a personal judgment in addition to the lien. Moreover, the court stressed the fact that the court had the power to appoint the receiver under the authority of section 140, Civil Code, which provides that in divorce cases the court may require the husband to give reasonable security for providing maintenance or making any payments required and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case. The reasoning in the Montgomery case, and its consideration and résumé of the California cases on the subject is far more persuasive than the opinion in the Lisenbee case, if the Lisenbee case can be considered as opposing the rule in the Montgomery case, which did not even consider the Montgomery case, particularly as it is apparent that the counsel in the Lisenbee case assumed and did not question, that the court had the power to issue the execution. But it is important to note that in the Lisenbee case, the court made a direct order for the payment of money by the husband as well as making such payments a lien upon the property.

In the case of *Willen* v. *Willen*, 121 Cal.App. 351 [8 P.2d

942], in an interlocutory decree of divorce, the court awarded the wife $40 per month for support of herself and her children. The husband was required to pay this amount from the sum of $150 monthly payments of disability insurance which he was receiving. The payments were to be made by a receiver appointed by the court, and were made a lien on the insurance policies and the amounts payable thereunder. Execution was levied on unpaid proceeds of the policies for delinquent amounts due under the decree. The husband contended, in opposition, that the proceeds were exempt under section 690, Code of Civil Procedure. The court held that the proceeds were subject to execution. The court in effect, treated the judgment declaring the lien on the policies as a judgment of foreclosure of the lien, although the judgment apparently did not direct foreclosure. The question the court mainly was determining was one of exemption. The court held that that portion of section 690 applied which then read, in part, " '. . . no article, however, or species of property mentioned in this section is exempt from execution issued upon a judgment recovered for its price or upon a judgment of foreclosure of a mortgage or other lien thereon.' " There was in that case a personal judgment. As in the Lisenbee case, no reference was made to the Montgomery case, and apparently, the court was applying the provisions of section 140, Civil Code, which provides authority to a court to enforce its orders for support by appointment of a receiver or by any other remedy applicable to the case. "Any other remedy" would, of course, include the remedy by way of execution. It is rather interesting to note that in the Willen case, the court cites *Anderson* v. *Anderson*, 123 Cal. 445 [56 P. 61], as authority for the statement that proceeding by a writ of execution is a "proceeding upon the judgment," a statement which, of course, no one disputes, and yet, in the Anderson case, the court denied the right to the issuance of a writ of execution in a case where the support money ordered paid to a wife by a husband was secured by a lien on real estate and a receiver appointed to take charge of the real estate.

In *Chapin* v. *Broder*, 16 Cal. 403, the court flatly held, in a foreclosure of mortgage case wherein the decree of foreclosure specifically provided that execution should issue on the deficiency, that until the property had been sold and the deficiency determined, a writ of execution could not issue,

even though the judgment stated the amount due. "There was no personal judgment for this amount, nor was there anything in the nature of a personal judgment" (p. 422). It is interesting to note that in the case at bar, while the judgment established a lien in the sum of $1,250 there were no conditions or time set for the payment of it. All the more reason why execution would not be the proper remedy. An action in equity would give the court an opportunity of determining what would be a reasonable time to be given to plaintiff to perform. "The creation of a lien does not of itself imply that any person is bound to perform the act for which the lien is a security." (§ 2890, Civ. Code.) Appellant questions the power of the court to establish the lien on the property for the amount plaintiff was to repay defendant for his interest in the property. This, however, is an inherent power of an equity court, and is also provided for by section 140, Civil Code.

Although the Montgomery case apparently considered that the question of whether or not a personal judgment is imposed is immaterial, if a lien is imposed, and there is some slight confusion raised by the Lisenbee and Willen cases, the true rule seems to be, and on principle, should be, that if the judgment imposes a personal liability, as well as declares a lien, the judgment creditor may have execution on the specific property, upon which the lien is declared, or on other property of the judgment debtor, as upon an ordinary money judgment which does not declare a lien. Thus, his remedies should not be less than upon an ordinary money judgment because the court has attempted to give an added protection through declaring a lien on specific property. But if no personal liability is imposed by the judgment declaring the lien, and the judgment makes no express provision for enforcement of the lien, execution will not issue and the judgment creditor can only enforce the lien by an independent action to foreclose.

Defendant contends that the court would have no jurisdiction to quash a writ of execution after six months from the time that the order for its issuance was made, or at least, after six months from the date of the sheriff's deed, and relies on section 473, Code of Civil Procedure. However, section 473 does not apply to a void order, but only to valid orders from which a party is seeking relief upon the grounds of inadvertence, mistake or excusable neglect. The court having no

power to order execution, its action can be attacked any time without regard to limitation. That also answers the defendant's claim that plaintiff is guilty of laches in delaying her application for relief practically a year and a half from the time she gained knowledge of the issuance of the order. The order for issuance of the writ of execution being void, all the proceedings by the sheriff were likewise void, and plaintiff was entitled to disregard these proceedings and to attack them at any time.

In this case, as there was no provision for a personal judgment or for enforcement of the lien, execution will not lie, and the motion to quash writ of execution and to vacate the execution levy and sale should have been granted.

Judgment reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied December 12, 1942, and respondent's petition for a hearing by the Supreme Court was denied December 31, 1942.