700 P.2d 852

**Clifford L. and Eleanor WOLFSWINK-EL, husband and wife, Petitioners,**

v.

**SUPERIOR COURT of Arizona and for the COUNTY OF GILA and the Honorable James E. Don, a Judge thereof; Lyman Peace, Sheriff of Gila County, Arizona,**

**and**

**B.B. Bonner, Jr. and Kaide Bonner, husband and wife; and George Nackard and Leonora Nackard, husband and wife, Respondents.**

**No. 2 CA–SA 0131.**

Court of Appeals of Arizona, Division 2.

Oct. 30, 1984.

Review Denied Feb. 26, 1985.

Fennemore, Craig, von Ammon, Udall & Powers by Leland M. Jones and S. Cary Forrester, Phoenix, for petitioners.

Jerry L. Smith, Flagstaff, for respondents.

## OPINION

HATHAWAY, Judge.

This special action is brought from the trial court's refusal to quash a writ of special execution issued on July 20, 1984. Because we believe the trial court failed to perform a duty required by law as to which it had no discretion, and because we believe petitioners are without an adequate remedy by means of an appeal, we assume jurisdiction and grant relief.

The underlying litigation concerns the resolution of competing claims to real property known as the Tonto Natural Bridge. In June 1971, North Star Development Corporation obtained a loan from real parties in interest Bonner and Nackard and executed a quitclaim deed of the bridge to them. The deed was later found by a superior court to have been given as security for the loan to North Star and was to have been recorded only in the event of default. It was later recorded by Bonner and Nackard. In February 1972, North Star entered a written contract whereby it agreed to sell the bridge to petitioners Wolfswinkel. Bonner and Nackard apparently frustrated the closing of escrow by refusing to accept the amount owing to them by North Star and refusing to deliver the deed to North Star. Wolfswinkels filed an action in Coconino County Superior Court when escrow did not close seeking damages against Bonner and Nackard for interference with contractual relations and seeking specific performance of the contract for sale of the bridge.

On July 25, 1974, judgment was entered in the Coconino County action. That judgment provided:

"The agreement between Messrs. Nackard and Bonner and North Star Development Corporation together with the escrow instructions, quitclaim deed and corporation resolution of North Star Development Corporation, all dated June 28, 1971, comprise an equitable mortgage

and require foreclosure of the same by separate legal action."

The judgment further quieted title to the bridge in North Star and decreed the specific performance of the contract. On December 16, 1977, Bonner and Nackard, together with their wives, filed a complaint to foreclose the judgment lien in Gila County Superior Court. North Star answered, setting up numerous defenses to the foreclosure action, and the Wolfswinkels filed an answer and counterclaim for interference with the contract. The Wolfswinkels later amended their answer to assert a cross-claim against North Star for the enforcement of the decree for specific performance entered in the Coconino County action.

On January 15, 1981, the court entered its first amended judgment, ordering specific performance of the contract and leaving for later determination the amount of the Wolfswinkels' attorneys' fees against North Star and the amount of the lien held by Bonner and Nackard. On January 26, 1981, Bonner and Nackard filed a motion for summary judgment wherein they sought the court's determination only as to the amount of their equitable mortgage. The motion was ultimately granted by the court following oral argument on February 26. At that time, the court entered its second amended judgment, fixing the amount of the equitable mortgage, the amount of the Wolfswinkels' attorneys' fees and the date for closing escrow. On July 2, 1984, Bonner and Nackard had a writ of special execution issued by the Gila County clerk to sell the bridge. On July 20, a revised writ of special execution was issued by the clerk, and on July 25, the Gila County Sheriff levied on the bridge and gave notice of the sale to take place on August 29, 1984. On August 16, petitioners filed their motion to quash the writ of special execution, or in the alternative, to stay the execution. The court denied the motion to quash and ordered that the sale proceed any time after September 18, 1984.

This is the order giving rise to the present special action, and this court has stayed all proceedings in the lower court pending this decision.

The second amended judgment of February 26, 1981, awarded the bridge to petitioners subject to:

". . . an equitable lien in favor of George Nackard, husband of Leonora L. Nackard, and B.B. Bonner, Jr., husband of Kaide Bonner, as disclosed by Finding of Fact; Conclusion of Law; and Judgment recorded in Docket 359, page 592, in the total amount of $468,694.77 plus interest of $63.95 per day."

The second amended judgment followed the filing by Nackard and Bonner of their motion for summary judgment for an "expeditious determination" of the amount of their "equitable lien." All this followed the September 29, 1980, filing by Nackard and Bonner of their amended complaint to foreclose the equitable lien granted in the original litigation. Although they sought to have the lien foreclosed by judicial decree, the decree merely determined the amount of the lien and did not expressly foreclose the same.

 An equitable lien is a right over property constituting an encumbrance, so that the property itself may be proceeded against in an equitable action and either sold or sequestered upon proof of a contract out of which the lien could grow or of a duty on the part of the holder so as to give the other party a charge or lien on it. It is merely floating equity until the time that a judgment or decree is rendered actually subjecting the property to the payment of the debt or claim. *Nelson v. Nelson Neal Lumber Company*, 171 Wash. 55, 17 P.2d 626 (1932); *Calacurcio v. Levson*, 68 Ill.App.2d 260, 215 N.E.2d 839 (1966); *Monegan v. Pacific National Bank of Washington*, 16 Wash.App. 280, 556 P.2d 226 (1976). The case of *Wellborn v. Wellborn*, 55 Cal.App.2d 516, 131 P.2d 48 (1942), is particularly helpful. There, a wife sued for an annulment of her marriage claiming

her husband was guilty of bigamy. She sought to quiet title to certain real property in herself claiming it as separate property. The husband contended his earnings had been used to pay for the property. The court granted the annulment and quieted title in favor of the wife subject to a lien in the amount of $1,250 in favor of the husband. Following the judgment, a writ of execution was issued by the court at the request of the husband. The sheriff levied on the real property and the property was sold at an execution sale. The wife moved for an order quashing the writ of execution and vacating the levy and sale. She appealed when the motion was denied. The California Court of Appeals held:

"But if no personal liability is imposed by the judgment declaring the lien, and the judgment makes no express provision for enforcement of the lien, execution will not issue and the judgment creditor can only enforce the lien by an independent action to foreclose." 131 P.2d at 52.

The second amended judgment imposed no personal liability on North Star in favor of Nackard and Bonner and there was no provision foreclosing the equitable mortgage on the sale of the real property. Under A.R.S. § 12–1554, a special execution must set forth in substance those portions of the judgment which command a sale or delivery of specific property and the amount of cost or damages if any. Therefore, since the second amended judgment does not command the sale or delivery of specific property, it is not enforceable by general or special execution. Accordingly, the writ of special execution issued on July 20, 1984, was void and of no effect and should have been quashed. The trial court's refusal to quash the writ was therefore arbitrary in its refusal to perform a duty required by law. The order denying the motion to quash is vacated and the court is ordered to enter an order quashing the writ of execution. Relief granted.

BIRDSALL and HOWARD, JJ., concur.