**In re SAN JUAN CONSTRUCTION CO., INC., Debtor.**

**SAN JUAN CONSTRUCTION CO., INC., Plaintiff,**

**v.**

**(a) Jorge Ramirez DE ARELLANO, Jr., Maria E. Ramirez De Arellano De Quiñones; Segismundo Quiñones Torres, Teresita Ramirez de Arellano De Montilla, y Eduardo Montilla Amy; (b) The Hereditary Succession of Jorge Ramirez De Arellano, Consisting of Jorge Ramirez De Arellano, Jr., Maria E. Ramirez De Arellano De Quiñones, Teresita Ramirez De Arellano De Montilla and his widow Ena Aparicio De Ramirez De Arellano; and (c) The United States of America, Defendants.**

Bankruptcy No. B-78-350-A.
Index F.

United States Bankruptcy Court,
D. Puerto Rico.

June 22, 1981.

Ralph Rexach, Hato Rey, P.R., for plaintiff.

Otero Suro, Hato Rey, P.R., for defendants.

## OPINION AND JUDGMENT

ANTONIO I. HERNANDEZ–RODRI-GUEZ, Bankruptcy Judge.

For the sake of clarity the defendants in this case will be referred to by letter in the following manner: Jorge Ramírez de Arellano, Jr., María E. Ramírez de Arellano de Quiñones, Segismundo quiñones Torres, Teresita Ramírez de Arellano de Montilla and Eduardo Montilla Amy will be referred to as Co-Defendants "A"; The Hereditary Succession of Jorge Ramírez de Arellano, consisting of Jorge Ramírez de Arellano, Jr., María E. Ramírez de Arellano de Quiñones, Teresita Ramírez de Arellano de Montilla and his widow Ena Aparicio de Ramírez de Arellano will be referred to as Co-Defendants "B"; and the United States of America will be referred to as Co-Defendant "C".

The present controversy comes to this Court upon the occurrence of the following events:

A. Co-defendants "A" and the predecessor of the co-defendants "B" received in 1972, certain promissory notes as payment for stock they held in a corporation (not in debtor corporation) from San Juan Construction Co., debtor herein. When these notes matured (more than two years prior to debtor's filing bankruptcy), debtor corporation was unable to pay the principal due.

B. On February 24, 1976 co-defendants "A" commenced a civil action to collect on their notes, and on March 10, 1976 Mr. Ramírez de Arellano, predecessor to co-defendants "B", started a similar suit. Co-defendants herein sought and obtained a pre-judgment provisional remedy on debtor corporation's real property.

C. Both co-defendants "A" and Mr. Ramírez de Arellano Sr. obtained judgments in default against the debtor corporation, the first on May 24, 1977 and the second on May 23, 1977. These judgments were notified to debtor corporation, plaintiff in the case at bar, defendant in the civil suit herein discussed.

1) Both of the above co-defendants obtained post-judgment provisional remedies in the nature of a judgment lien on debtor's real property, by filing their respective judgments in the Registry of Judgments of the property registry of Bayamón on October 17, 1977.

E. A certification of said Registry, submitted in evidence by the co-defendants in the hearing before this court, shows that this post-judgment remedy was registered as a lien over certain property of debtor-corporation, known as the Alegría Apartment project, subject of this proceeding.

F. On October 5, 1978 debtor filed Bankruptcy, and within the proceedings of the case, filed a complaint on October 31, 1980 requesting authorization to sell certain real property of the estate to wit, the Alegría project, mentioned above. The request was to sell free and clear of all liens. A title search of the property disclosed three liens which debtor proposed would be paid from the proceeds of the sale once the validity of these was established. The liens in the Registry of Property are the following:

1. Judgment in the sum of $54,000.00 for costs, Civil case CS–76–445 before the Bayamón Superior Court in favor of Jorge Ramírez de Arellano, Jr., María E. Ramírez de Arellano de Quiñones, Segismundo Quiñones Torres, Teresita Ramírez de Arellano de Montilla, and Eduardo Montilla Amy, recorded on October 17, 1977 at folio 109, Volume 1, of the Registry of Judgments of the Registry of the Property of Bayamón, First Section.

2. Judgment in the sum of $58,000.00 civil case CS 76–631 in favor of Jorge Ramírez de Arellano, recorded on October 17, 1977 at folio 109, Volume 1, of the

Registry of Judgments of the Registry of Property of Bayamón, First Section.

3. Attachment in favor of the United States of America in the sum of $31,-593.70 for taxes owed recorded on March 28, 1978 on folio 87 inscription 10 of the Federal Attachments Registry of the Registry of the Property of Bayamón, First Section.

G. On November 10, 1980, co-defendants "A" and "B" filed an answer to the complaint, claiming that their liens were in fact valid and that if in effect they were to be paid in full, they had no objection to having the complaint granted as filed.

H. A pre-trial hearing was held on November 14, 1980. Whereupon a stipulation was signed between counsel for plaintiff and counsel for co-defendants "A" and "B", on November 18, 1980, agreeing to the sale and that the proceeds of the same would be deposited in this court. This stipulation would not be construed as barring plaintiff from contesting the validity of co-defendants' liens or the amount of their claim. Co-defendant "C" signed a similar stipulation with plaintiff on November 24, 1980.

I. A judgment order was entered by this court on November 24, 1980 authorizing the sale and approving the aforementioned stipulation. It also ordered the Registrar of Property to cancel all liens with respect to the property in question and further ordered that the proceeds of the sale be deposited with the Clerk of the Court and invested in interest bearing instruments.

J. On January 30, 1981 co-defendants "A" and "B" filed a motion requesting that the court establish the validity of their claims and order the payment of said liens from the money deposited by the buyer of the property.

K. On February 6, 1981 Corporación de Renovación Urbana y Vivienda (C.R.U.V.), the buyer of the property in question, consigned the check for the proceeds of the sale in this court in the amount of $418,993.14.

L. On February 23, 1981 debtors filed a reply to the motion requesting the payment of liens filed by co-defendants "A" and "B", which they also entitled Amended Complaint. They requested therein that co-defendants' liens be annulled and thus treat said defendant as unsecured creditors; or in the alternative, that the claim of co-defendant "B" be subordinated to unsecured status; or in the third alternative, provide that defendants herein contribute to the payment of administrative expenses.

M. On March 4, 1981, Co-defendants "B" filed, under new legal representation, a motion requesting that the estate of Jorge Ramírez de Arellano, Sr., be allowed to intervene in this action; that the determination of the state court, permitting the attachments that gave rise to the liens herein, be considered to constitute res judicata, thus leaving the Bankruptcy Court without the power to relitigate said determination; and finally, requested the payment of the liens held by the estate of the deceased.

N. A pre-trial hearing was held on March 4, 1981 at which time the parties were given a period of time to file memorandums of law.

O. On March 26, 1981 debtor-corporation filed a Motion for Partial Summary Judgment and a memorandum of law in support of the same. They requested therein that the court enter judgment as to their first claim for relief, stated in the Amended Complaint of February 19, 1981, to wit, that the lack of notification to debtor of the post-judgment lien caused that said lien on the property was not perfected prior to the filing by debtor of his petition in Bankruptcy.

P. Co-defendants "A" filed an opposition to plaintiff's Motion for Summary Judgment and a request for Summary Judgment in their favor and a memorandum of law in support thereof on March 30, 1981. They alleged therein that they were secured by two independently valid liens, that is, the pre-judgment attachment and the post-judgment lien.

Q. On May 12, 1981 this court entered an order directed to the parties herein, stating that the parties had not placed the court in a position to decide the issues and that additional documents were required. The parties were granted ten days to file

the same, which consisted mainly of information relating to the pre-judgment lien, claimed as valid by co-defendants "A".

R.  On June 6, 1981 defendants "A" filed a motion to which they attached a certification of the Registry of the Property in relation to the pre-judgment attachments. In said motion they accept that said pre-judgment attachment had been made on a property other than the one herein in question, whereby they no longer were to pursue this attachment as creating a valid lien over the property.

S.  On May 20, 1981 plaintiff requested an extension of time to comply with our order of May 12, 1981, which was granted. They have not to date complied, but we are free to decide the issue before us, as co-defendants "A" have supplied the court with the documents required.

Before us at this time, we have the two motions for Summary Judgment, filed by plaintiff and Co-defendants "A" respectively.  At issue before us is the validity of a certain alleged lien on debtor's property created when co-defendants presented a judgment obtained by them in the state courts before the registry of the property and had the same duly docketed and indexed.  We must decide whether this judgment lien created a true and valid lien over debtor-corporation's property, and moreover, if in order to be a valid lien, the owner of the property should have been notified of the action taken when said judgment was presented to the Registry for recordation. If we find that in effect a valid lien existed, co-defendants "A" would be considered secured creditors of debtor-corporation.

We will begin by giving a short recount of the Judgment Lien Act of March 8, 1906. This law established in Puerto Rico a procedure, by which a party with a judgment in its favor, can by following certain procedural steps, present an abstract of a judgment at the Registry of Property and upon the docketing and indexing of said judgment, the same comes to constitute a general lien over all the immovable property of the debtor registered in that district or acquired and registered in the future up until the expiration of the lien by the passage of the statutory time limit.

Section six of the law (now 30 L.P.R.A. 1806) defines the lien so established as follows:

> When a judgment has been recorded and indexed, as provided for in the preceding sections, it shall at once operate as a lien upon all the immovable property of the defendant or defendants, not exempt from execution, situated in the district where such abstract is recorded, and upon the immovable property which the defendant or defendants may thereafter acquire in such district, and such lien shall be of like nature and preference as those mentioned in paragraph 5 of section 5193 of Title 31.

Although the 1906 law has been incorporated into the Puerto Rico Mortgage Law, it does not have its origins in the Spanish Mortgage Law but is derived from similar state laws of the United States.  It is practically identical in wording to the original phrasing of Section 674 of the Code of Civil Procedure of California (since amended), that in essence provides a method by which the recording of an abstract of judgment with the recorder of the county creates a lien on all real property of the judgment debtor, not exempt from execution, in that county, owned by him at the time or which he may subsequently acquire before the lien expires.  (40 *Cal.Jur.* 3rd. 585, Sec. 182).

Because the Judgment Lien Act has a different origin from the rest of the Mortgage Law, Justice Del Toro, in his interpretation of the law in *Hernández v. Medina* (19 P.R.R. 84) states: "This Act creates a system of liens which to a certain extent is not clear and is in conflict with the system established in the Mortgage Law..."  Although it is clear that this lien has similar effects as that of the cautionary notices made by reason of attachments, sequestrations or executions of judgments by virtue of a judicial mandate as provided for in the mortgage law, it is a lien established by statute and not governed by the same requirements as the latter.

We have no doubts that a judgment lien is a valid lien over the property of the owner of real property, registered in the same district in which the judgment is registered, if all the procedural requirements are met. The certification submitted by the parties, evidences that the Registrar of Property describes the judgment lien herein as a lien encumbering the property here in question. Moreover the limited number of local cases that treat the subject of judgment liens assert that once a judgment is recorded and indexed according to law, the same operates immediately as a lien upon all the immovable property of the defendant, not exempt from execution, situated in the district and upon all the immovable property which the defendant may thereafter acquire in such district. (*Hernández v. Medina*, supra.; *Viñas v. Gandía* 25 P.R.R. 202; *Crespo v. Tribunal* 83 P.R.R. 568).

Likewise, United States cases, especially those in California where, as previously stated, the law is practically identical to ours, establish that a lien on property is constituted with the docketing of judgment according to the specifications of law. (*Lisenbee v. Lisenbee*, 42 Cal.App. 567, 183 P. 862; *Lang v. Klinger,* 34 Cal.App.3d 987, 110 Cal.Rptr. 532).

In *Sampsell v. Straub* 194 F.2d 228, 9th Cir., the Court of Appeals for the Ninth Circuit, states when reviewing a Bankruptcy case, that "A California judgment lien on Bankrupt's property, though perfected only by voluntary recordation, was a lien by 'legal and equitable proceedings' ". Although this interpretation was offered in relation to Section 70(c) of the Act, it follows that the court attached the status of a valid lien to this type of lien.

The debtor in the instant case, argues that because local law requires that attachments be notified in order to be valid after the Supreme Court handed down a decision in the case of *Albaladejo v. Vilella* (106 D.P.R. 331, 1977), a registering of a judgment according to the Judgment Lien Act should likewise be notified to the debtor in order to be considered a valid lien.

As previously discussed, a judgment lien has effects similar to those of an attachment, but because it is derived from a different law, it follows an entirely different procedure, with different requisites for its perfection. The recording of an abstract of judgment is not a judicial action, but rather it is the exercise of a statutory right which does not call for the assistance of the court (40 *Cal.Jur.* 3rd. 587). In this respect, it differs from the attachment that requires the authorization of the courts. "The recordation (of a judgment lien) is an independent step in the sense of being something voluntary beyond the entry of judgment . . . it is a devise to give a judgment particular additional effect" (Sampsell, *supra*, p. 230).

A judgment lien is purely a creature of statute. Accordingly the terms and legal effects of the statute are controlling with respect to the existence of a judgment lien and with respect to the rights of the judgment creditor under such a lien. Generally speaking, a statute making provisions for a judgment lien is construed strictly. (*Fidelity & Deposit Co. of Maryland v. Fulcher Brick Co.*, 161 Tenn. 298, 30 S.W.2d 253). Whereby a judgment lien can only be obtained by complying with the requirements of the statute by which they are created (*Roseburg Loggers Inc. v. U. S. Plywood-Champion Papers Inc.*, 14 Cal.3d 742, 122 Cal.Rptr. 567, 537 P.2d 399). Our local law as cited earlier requires that the abstract of the judgment be presented to the registrar, that the latter record the same in the judgment record, noting on such record the date and hour of such entry, and that the registrar proceed to index such entry as provided for in the law and collect a fee, no mention is made in the law as to providing notice to any party. The above requirements were met by the judgment creditor, as can be verified by the certification of the registrar submitted to us. Moreover, the object of a judgment index, according to various cases cited in 49 *C.J.S.* Judgments § 464, is precisely to furnish notice to purchasers, subsequent encumbrancers and *other interested parties* of the

existence of the judgment, and therefore due indexing serves as constructive notice of a judgment lien on the property involved.

The three Puerto Rico cases cited earlier do not mention notification as a requirement for a judgment lien, nor do cases in the states where there are similar judgment lien laws. *Viñas, supra.*, states, that the "registry is public and gives notice to everybody" (p. 749); "that he recorded the same in the registry, the record being carried to the index in accordance with the law, thus creating a lien...." (P. 203). In Hernández, supra., "... the effect of Section 6 of the Act relating to judgment liens, approved in 1906, clearly appears from its own terms. According to these it is sufficient to record the judgment in the judgment record referred to in Section 3 and enter it in the index as provided for in Section 4 so that it shall *operate immediately* as a lien upon all the immovable property" (emphasis ours, at page 87).

Likewise, California cases state, "Docketing of Judgment imparts constructive notice of lien of judgment of real property..." (*Page v. Rogers* 31 Cal. 293); "... from time it is docketed, becomes lien on all real property of judgment debtor..." (*Liesenbee, supra* 182 Pp. 862); "... a judgment lien attaches to the judgment debtor's property *when* the abstract of judgment is recorded..." *Lang, supra*, 110 Cal.Rptr. p. 532).

None of the cases we found, either in Puerto Rico or in other jurisdictions, mentioned notice as a requisite, for liens created by statute, require merely that the conditions specified in the statute be met. We do not believe it is proper to require additional conditions not contained therein.

We conclude that the requirement of notice contained in the case of *Albaladejo, supra*, referred to attachments only, and that the Supreme Court did not intend to extend this requirement to judgment liens.

WHEREBY, this court grants co-defendants "A", to wit, Jorge Ramírez de Arellano, Jr., María E. Ramírez de Arellano de Quiñones, Segismundo Quiñones Torres, Teresita Ramírez de Arellano de Montilla and Eduardo Montilla Amy, their motion for summary judgment, declaring that the lien they obtained over the property belonging to debtor, San Juan Construction Co., is a valid lien and that therefore, they are secured creditors insofar as the property here in question. Plaintiff's motion for partial summary judgment as to co-defendants "A" is therefore denied.

IT IS SO ORDERED.